uncharacteristically with a confession. The confession is that all of the inflammatory adjectives that I used in the brief and that I'm likely to use in oral argument describing the conduct of Mr. Letton's office, Jan Mann, Jim Mann, Sal Perricone, I can't take the authorship of it. I didn't coin those adjectives. They were coined by either a federal judge or federal judges or one of Mr. Letton's people themselves. So for example, Judge Englehart, grotesque misconduct, carnival atmosphere, a legal odyssey, the dark Bethnic of misconduct, fetish surrounding, government hijinks, skullduggery. Judge Head, who presided over the case, sordid misconduct, shame on the U.S. Attorney's Office. Mr. Perricone, Letton's posse, fish rots from the head down. Jan Mann, my gig isn't over because we won, we won, we won, we won. Mr. Lemon, are you addressing the points that you're raising on appeal? I'm getting to, Your Honor. Well, it's time to get there. All right. Well, I want to demonstrate that I think this is an unusual case. I see the government suggests that it's all based on speculation. And what I'm saying is that submitting to you is that the groundwork here really was undone by a plow. This vineyard has been plowed by other judges, which I think has more credibility than just a defense lawyer making these accusations. Now— But I gather none of these comments were referring to your client, but to the U.S. Attorney's Office. Correct. Correct. And of course, they, on their part, contributed their own comments about my client, that he's Al Capone, that what's a white politician from suburbia doing with a black two-lane-abroad lawyer? I think that kind of atmosphere is atrocious. And I will also make a prediction that this panel will agree that this type of conduct is unacceptable. We all agree with that. Right. So I'm moving on. 2255B, unless the motion and files and record conclusively shows that the prisoner is entitled to no relief, the court shall grant a prompt hearing. Now, I submit to your honors that the papers, the motions, the pleadings in this case does not conclusively show. It's just the opposite. I think it conclusively shows that we are entitled to some relief and that, therefore, they should have been an evidentiary hearing. Now, the government in its brief tries to suggest that somehow or another this is a Strickland claim. It was never meant to be a Strickland claim. It was never alleged to be a Strickland claim. We never alleged that the trial lawyer did anything deficient. Erin Broussard wouldn't... Okay, let's assume we also agree with you that... I'm sorry? You're arguing that a chronic claim. Chronic. And so we have a situation here that chronic is obviously what controls the case. But Judge doesn't mention the exception. He rules as though this was a Strickland case and that we didn't show prejudice. Well, you know, if you analyze a tort claim by contract law, you're probably going to come up with an erroneous result. So the point is that what we alleged all along as a chronic claim, the trial judge never came to grips with that. So where, I mean, where is the prejudice? How did this, your client pled guilty, got 36 counts dismissed. It seems like your client was in agreement with a plea bargain. So how did this, what was going on in the U.S. Attorney's Office prejudice your client? I understand that there's an uphill battle whenever there's a plea. Of course, the U.S. Supreme Court just recently in that Kentucky v. Padula case reversed the conviction based on a plea because the trial lawyer was ineffective in failing to advise his client about the consequences of deportation because he pled to a deportable case. Here, your Honor, everything... The case is not just about the misconduct, as bad as that is. The case is about external circumstances. It tells directly how that impacted the guilty plea. Well, because had... That's what I couldn't get it from your brief, the connection. Right. What we're saying is that every time that the trial lawyer became aware of some type of misconduct, he asked for an evidentiary hearing. Okay. First was when a Paracombe was outed. He asked Judge Head for an evidentiary hearing. To do what? To examine, you know, the 6E violations in the Eastern District on the Lenton's regime are unbelievable. They're just unbelievable. So you have the... When I want to find out when a client of mine is going to be indicted, I don't... Well, the new administration is different, but it used to call Gordon Russell. It's incredible the type of 6E leads. So the big thing about when Paracombe broke, the lawyer, the trial lawyer asked for a 6E contempt hearing and a change of... And a recusation, a recusal, and an evidentiary hearing. The judge wouldn't do that, so he denied it. Following that, he pled guilty. Now, had he known... You see, the whole thing about this case is that we are accepting Jan Mann's testimony, which was behind the Iron Curtain until recently. Accepting that testimony that when Paracombe was outed in March of 2012, she told Lenton way back then that she too had been blogging, and they'll tell me how many other people have been blogging. Now, instead of that information, I believe is very critical... All right. Let's assume counsel for your client had that information in hand before the guilty plea. What would you have done with it? Well, I know what I would have done with it. I'd have filed either a motion to dismiss, and I would not have pled guilty. And Mr. Jenkins is saying the same thing. I mean, look, there was an external circumstance here which effectively interfered and prevented this trial lawyer from probing, I think, the most serious case of prosecutorial misconduct that I've ever come across. And that as a result of that adversarial system broke down. It just broke down. What relief do you want at this point? At this point? Well, the information behind the Iron Curtain that was never revealed. You see, on three different occasions, the trial lawyer asked Judge Head, push back this curtain, and he wouldn't do it. He wouldn't do it when Paracombe was outed. He wouldn't do it when Jan Mann was outed. And he wouldn't do it at the 2255 hearing, which is based on the fact that we then found out that Jan Mann was sane and testified under oath, that way back in ... We got all that. What do you want now? What do you want? Your brief ... That would have ... In your brief, before you answer Judge Olin's question, your brief only says the court should ... Yes. That, I think, is the most realistic thing. I may be assuming too much, but yes, that's what I'm asking for, is a remand, because it seems to me that under 2255B, I should have been entitled to an evidentiary hearing. And let me point out that the information of this misconduct ... Can you point to instances in the record where you ask for an evidentiary hearing on the 2255 motion? Well, yeah. I filed the 2255 motion. I assumed that the judge ... He didn't deny it summarily. I requested discovery to get ready for an evidentiary hearing, and then all of a sudden he denied it. Let me ask my question again. I'm only going to ask it one more time. In your opening brief, the only relief that you ask for is reverse remand for an evidentiary hearing. I'm asking you whether you can point to any instances in the record of this case in which you ask specifically for an evidentiary hearing on the 2255 motion. Well, I know we asked it. I know the trial lawyer asked it on the motion to recuse. I know he asked it right before sentencing on the 2255 memorandum that we filed. I can't ... Well, we definitely asked that he vacate Mr. Broussard's conviction or alternative his sentence. I don't know if we actually used the word evidentiary hearing, but it was obvious that that's what we had in mind. I mean, in other words, here you have a situation. I'm not so sure that you actually have to do that at 2255. It's like a civil proceeding. You file a complaint or a petition or a motion. The government opposes it. The government says in its opposition, we're not entitled to any relief because we have this report that establishes that there was no misconduct known by Letton contemporaneously. We have it, but you can't get it. Now, what kind of a civil case is that where the defendants are permitted to ... Okay, let's assume that Letton knew before your client was sentenced and before your client pled guilty that Ms. Witt and others in the DOJ Department had blogged. What would evidentiary hearing ... What are you going to do with that evidence? What you do is you argue that the adversarial process was perverted in this case by a maverick run amok ... How did that change the facts? How did that change any of the things that your client pled guilty to factually? Because then the advice might have been, don't plead guilty. Let's file a motion to decide to dismiss. This is outlandish conduct. That's what I'm saying. Let's assume that you have an evidentiary hearing and you show that Letton did in fact know before he pled guilty, your client pled guilty, and before he was sentenced that other people were blogging. How does that entitle you to anything? It's not just the blogging, Your Honor. It's the cover-up by Letton. In other words, when Judge Head spoke to him in December during that telephone conference, Letton knew at that point, okay, if you believe Jan Mann and I do, that he knew all about it all along. But he doesn't disclose that to Judge Head. Let's assume that you can prove that in an evidentiary hearing. Where does that get you? What does it get me? Where does it get you? I think my client then would feel that the cards are not stacked against him. That every time he tried to get some type of relief, it was knocked down. And so his will was overborne. You know, all of this is happening, and he, I think, and sentencing could have been different. It could be used for sentencing. How? Because don't you think, well, how? Let me tell you, if you look at Mr. Mouton's sentence by Judge Feldman, who was a part of the Fazio-River Birch thing, where all of this misconduct first emerged, okay, Judge Feldman gave an unbelievably lenient sentence to Henry Mouton because of the government misconduct. And that's quoted in the brief and cited in the brief, as well as in the 2255 motions. Look at Hank Tunn, another defendant, represented, by the way, by then-defense lawyer Ken Poling, who that case ended up, that client pled guilty, but all of this misconduct came about because they clearly indicted both Tunn and Mouton to put, to bring evidence against my client back then, Fazio, because they wanted Fazio to flip on Eby. And that same thing was going on in the Broussard case. And what I'm saying is the evidence of this misconduct ended up resulting in a lenient sentence for both Mouton and Poling's client, Tunn. And so, yes, I think it's all relevant, but we never could get this iron curtain drawn back, even though the trial lawyer repeatedly asked for it, and even though I asked for it in discovery on this 2255. All right. Your initial time has expired, Mr. Boytman. You've saved time for rebuttal. Mr. Boytman? Yes. Good morning, Your Honors. May it please the Court. My name is Kevin Boytman, and along with Trial Counsel Brian Klebb, I represent the government in this matter. Your Honor, we ask you to affirm Judge Head's denial of Section 2255 relief in this matter. And as you pointed out, Your Honors, the sole issue before this Court is the one that was preserved in the Certificate of Appealability by Judge Head, and it's whether trial counsel Robert Jenkins was ineffective for failing to communicate information withheld from him in the Court, and whether the inability to communicate that information precluded a voluntary guilty plea. Judge Owen, you asked this question. I see the issue on appeal as much narrower than that. It's narrowed by the blue brief, which requests only to remand for an evidentiary hearing. I mean, I want you to speak to the broader issues, but it seems to me that the appellant has limited the issue much more than what you described. I think so, and I think, Your Honor, as you've pointed out, that's the only relief that has been requested, and it kind of goes into the same question that Judge Owen asked, ultimately, is how does this affect the plea, and whether former U.S. Attorney Office Jim Letton, assuming he knew, how does that affect it? And the answer is it does not affect it. As a preliminary matter, do you agree with Mr. Broussard's counsel that Judge Head didn't analyze this under chronic? I agree, Judge, if you take a look at the order. In fact, I was looking at it again last night, that it looks like it is a Strickland-slash-Hill v. Lockhart analysis. So where does that leave us? Actually, I don't think that leaves the government in any worse position, Your Honor. I think you can affirm on any fact supported by the record, and I think either under a Hill-Lockhart standard or even a chronic standard, the denial of 2255 relief was appropriate. I certainly think that one reason Judge Head looked to the Strickland-into-Hill analysis was because that was raised in the initial brief. Mr. Broussard's brief, I'm sorry, Mr. Roofart's 2255 petition cited Strickland several times and never cited chronic initially. The chronic wasn't raised until Mr. Broussard's reply opposition to the government's opposition. But in this case, it doesn't matter whether you look at chronic or whether you look under Hill. There's no reason to remand this for an evidentiary hearing. There is no reason to vacate Judge Head's denial because as Judge Head found, and it's similar to the question you asked, Judge Owen, any knowledge by Jim Letton, if any, of the blogging activity does not shed any light on whether Mr. Broussard's plea was entered knowing and voluntary. What about Ms. Mann's role? What role did she have in the prosecution of this case, if any? Ms. Mann never had a direct role in the prosecution, Your Honor. I thought she signed the indictment. Many attorneys would sit in the indictment occasionally, Your Honor, but the day-to-day operations were not handled by Jan Mann, Jim Letton, or Sal Perricone. I thought Letton and Jan Mann both signed the operative indictment, the superseding indictment. I'm sorry? The superseding indictment. Yes, Your Honor, and that was standard practice in the office. The U.S. attorney, the first time, that pattern has changed a little now, but that was the practice then, so every indictment from that time would have multiple signatures. But as Judge Head indicated in his telephone conference in December 2012, he even noticed that he wanted AUSA's Brian Clubb and Matt Chester on the phone because those were the attorneys that he was dealing with. So it was Mr. Clubb and Mr. Chester that were handling the day-to-day operations of this case, not Jan Mann, including after Jan Mann had left the office, they still maintained the case. Jan Mann's involvement on this, Your Honor, though, again, as Judge Head pointed out, the revelation didn't matter. It's important to understand the timeline here. When Mr. Broussard pleaded guilty, all the comments that were online were already out there. They had known about these comments for five months at least, and especially that Sal Perricone had authored some of them. What they didn't know is that Jan Mann was also part of that, that she had also had made a few comments. But the comments themselves were there. The damage those comments could have done had already been there, and with that knowledge, Mr. Broussard pleaded guilty, and as Judge Head found in 1993 of the record, the revelation that Mann had also commented could add little to his decision to plead guilty. Likewise, he also stated later on that any potential knowledge that Jim Letton had of this, she has no light on the voluntariness of that plea. So getting back to your question, Your Honor, any knowledge that Jim Letton may have had does not matter to this case, and for that reason, it should not be remanded back for an evidentiary hearing. Looking at the chronic analysis, Your Honor, one, of course, we argued briefly that that was not actually the argument that Mr. Broussard made in the 2255, but to the extent, Your Honor, that it doesn't require a remand or a reversal of this matter. U.S. v. Chronic talks about a presumption of prejudice, but in three very specific situations that the Supreme Court talked about, where there's a complete denial of counsel, where there's the failure to subject the prosecution's case to meaningful adversarial testing, and where the circumstances are such that the likelihood of any competent lawyer to provide effective assistance is so small that the presumption of prejudice is appropriate. But as courts have said, including this court in Childress v. Johnson, these are rare, and the presumption of prejudice is reserved for a narrow spectrum of cases where the defendant is, in effect, denied any meaningful assistance. That's not what you have here. Mr. Robert Jenkins did a significant job and took great steps and aggressively represented Aaron Broussard. He filed, at page 252 to 82 of the record, he sought recusal motions. He sought sanctions for potential 6C violations at page 61 to 119. He sought a change of venue, pages 838 to 46. He sought to dismiss the indictment, page 566 to 98. He ultimately negotiated a guilty plea, which involved the dismissal of 25 counts of the superseding indictment. He sought evidentiary hearings, and he argued for a guideline range below that calculated by the PSR. In light of all this, it's very hard to say that Mr. Broussard was denied any meaningful assistance to where you would apply a chronic presumption. Moreover, the chronic presumption is not in line with what Mr. Lemon's ultimate claim is here, and he said that this is a case of prosecutorial misconduct. But if you look at those type of situations, those are not the type of situations where this court or any court has applied that type of presumption in mandating reversal or mandating remands to give whatever relief is requested. Brady violations come to mind right a bit when a prosecutor hides evidence. But even in that situation, there's no automatic reversals, Your Honor. At every step, the conviction is reversed only if the evidence is material. What about his argument about sentencing, that, you know, had he known at the time, the sentencing would have gone differently? Well, respectfully, we disagree, Your Honor, and first of all, question whether that's actually part of the COA preserved, but even if it is, the idea that this would affect his sentencing is really not based in any law that's presented. The goal of sentencing under 3553A and of the sentencing guidelines is to fashion a sentence to reflect the defendant's criminal behavior. It's not to punish the defendant, but I'm going to give you time off because the government did something. That would not serve the purpose of respect for the law under 3553A. It just doesn't comport with that, and I know that Mr. Lemon mentioned that Judge Fellman in the Mouton sentencing gave a more lenient sentence specifically because of this issue, but I respectfully disagree, and I think that is somewhat speculative, and without going into it anymore, the transcript of the sentencing is case number 11-048. It's document 61, if you're interested in looking at Judge Fellman's sentencing transcript in the Mouton case, and I know that at one point where defense counsel was arguing about the horrible prosecutorial misconduct, at least once, Judge Fellman said, but that doesn't change your client's conduct, so I don't think misconduct on the part of the office would realistically have resulted in a lesser sentence, but more importantly, I don't think that calls into question the nature of the guilty plea anyway, and I don't think that's actually the issue on the COA. I think one of the things you have to do, because chronic doesn't apply, it gets back to your question, Judge Prado, was where was the prejudice, and there is no prejudice here. He didn't assert prejudice under Hill v. Lockhart. He certainly didn't assert that he would have insisted on going to trial, which is required, and he didn't make a showing that he would have gone to trial had he not pleaded guilty. These are not super technical arguments that we're bringing up and that Judge Head relied on. In fact, Judge Head found it was notable that he never claimed he would have gone to trial, but that is the elements that a client or a defendant petitioner seeking ineffective assistance clients in a guilty plea has to show under Strickland and Hill, and he just did not do that. Let me ask you, the blogging that the AUSA was doing, did it discuss in any way the indictment in the case? The fact that the indictment was there, or are you talking about like internal grand jury violations? No, the fact that the indictment and the charge, and did it go into the specifics of the indictment, the blogging? Was it just in general about the character of the defendant, or did it go into the details of the facts surrounding the indictment? No, Your Honor, and I will say, I don't believe there's been any finding ever by any court that there was any factual issues, any secret factual issues that were put into the online comments. I don't think there's been any finding, which would be a 6C violation, basically. I don't think there's been any comments or any finding like that. Mr. Perricone admittedly authored several comments online, and so I'm not coming up with one specific, if that answers your question. But, well, there was no grand jury secret information or anything confidential that was expressed in the blog? No, there's been an allegation about that, but there's never been a finding of that, and even, however, even that situation would not, Judge Smith, be enough to remand the matter for that, because the 6E potential violations for sanctions and contempt that Mr. Lemons talked about still does not get to the plea. It might get to the punishment of a prosecutor, deservedly in some cases. It may get to other sanctions, but it doesn't affect the dismissal of the case. It doesn't affect the plea that was entered knowing involuntary, and this Court has certainly recognized things like that in In re Lance and McKenzie and the Bank of Nova Scotia case from the Supreme Court, that even the most egregious prosecutorial misconduct, for even that, an indictment would be dismissed only on the showing of actual prejudice to the accused, and again, Mr. Broussard has not even alleged or asserted actual prejudice. And Judge Owen, the absence of prejudice gets back to a question that you asked, Mr. Lemon. Had you had this information, what would you have done with it? Ultimately, the test under Hill v. Lockhart is, I would have not pled guilty and would insist on going to trial. Mr. Lemon gave you some examples of what he would have done, but you don't need to look there because the record in this case contains the affidavit of trial counsel Robert Jenkins, which is the only affidavit, the only evidence submitted with the 2255, and that tells you exactly what trial counsel Robert Jenkins would have done with it. The affidavit is at pages 1675 to 1680 of the record. Mr. Jenkins said, I would have pushed the government to reconsider its position on an Alfred plea. He said that the obstruction of not having this information inhibited his ability to advocate for a resolution in which Mr. Broussard would not have had to admit guilt, an Alfred plea. He did suggest that he could use it as rebuttal evidence against the government regarding his motion to recuse the office and to show cause why the government should not be held in contempt. He did say at the day of plea, had he known about it, he would have not advised Mr. Broussard to plea guilty at that time. But then he says he would have, as Mr. Lemon argued, Judge Owen, at sentencing, he would have given these documents to Judge Head and tried to get a lower sentence. Well, if the government should have been recused, where does that leave us? Well, again, Your Honor, I don't think, just to point out, I don't believe that is part of the COA before the court, and I think that's important, but I also don't think the recusal of the office as a whole would have been automatically granted or even automatically involved. Recusals, as the Tenth Circuit found in the Bolden case, which we had argued to Judge Head in motions to recuse, points out that it's very rare because, if nothing else, because of separation of powers issues for a court to order recusal of an entire United States Attorney's office. Normally, it's just the Assistant United States Attorney who has a specific conflict. But in this case, as Judge, so I don't think you'd have that situation anyway. But in any event, Judge Head pointed this out when he denied some post-guilty plea motions by Mr. Broussard and said, effectively, you got the recusal you wanted. U.S. Attorney Jim Letton, First Assistant Jan Mann, and Senior Litigation Counsel Sal Perricone had all resigned. Mr. Broussard got the recusal he wanted, in effect. Those people were gone. But what you look- And that was pre-sentencing? That was pre-sentencing. At the time the motion was filed, Jan Mann had not yet resigned. She had been demoted. She resigned shortly thereafter. But that was post-plea pre-sentencing after the December 2012 conference. So when you look at it, we don't have a situation of getting recused. What we have is a situation, as evidenced by Mr. Jenkins' affidavit, of what he would have done. And it was not to go to trial, which has required prejudice, Judge Breyer. I would have gotten a better bargain position. I wanted to plea guilty. I wanted to resolve the matter without guilt. If that's what you're doing, it's a desire to go to plea. Connect up with me. I thought Kroenig said you aren't required to show prejudice. Agreed, Your Honor. But I don't think the Kroenig situation is here for the reasons we argued. It doesn't fit that type of cases. You're just talking about prosecutorial misconduct. Do you still have to have harm? Yes, Your Honor, because prosecutorial misconduct still goes to how does it affect the case. And I think that's something this court expressed recently in its decision in 2013 in United States v. Poole, when it reversed the district court's grant of a new trial for perceived government misconduct. One of the final things in the Poole case was did the prosecutor's continued violations of a district court's, of a trial court's in limine orders, did that rise to the level where a new trial was granted? And this court said no. It said a new trial is not a mechanism for punishing contempt by a prosecutor. Specifically in note 24 of that decision, the court stated that if lawyers are in contempt, if lawyers are doing something wrong, there are ways of punishing them short of resorting to granting a new trial. I realize this is not a new trial, but it's a similar situation, Your Honor, and I think it's even harder for the defendant to get that here because his plea was knowing involuntary. But the idea is the same. Don't set the judgment aside if the error had no effect on it. That's a core idea from Strickland. It's a core idea that was behind the Hill v. Lockhart situation. And I think it's core behind this court's decision in U.S. v. Poole. Don't vacate a legitimate conviction to punish a prosecutor for misconduct having no effect on a conviction. If there was misconduct here, as the courts noted in Poole, there are mechanisms to deal with that. If a prosecutor violates orders, he's subject to discipline. He's subject to supervisory powers by the court. He can be held in contempt by the district court, by this court. He can be, he can face bar problems with his own state disciplinary counsel and his own state supreme court. So if the prosecutor's doing something wrong, hold the prosecutor accountable, but don't violate a conviction that was legitimately obtained and untainted by this. And as Judge Head found, it was untainted. The guilty plea was untainted by anything that happened, which, because of that, because Judge Owen, because of that, chronic does not apply, so the only possible basis for reviewing that. Is that a fact, do we consider that a factual finding by Judge Head or a mixed question of law and fact? What's the standard of review on that issue? The issue of? Judge Head's finding is that the guilty plea was not affected by this. That would be a finding of fact, Your Honor, subject to CLRA, but all legal conclusions, the ultimate legal conclusions, you would review de novo under that standard. But under any review you would give, the record supports Judge Head's decision to deny relief in this matter. A similar case, if you look at U.S. v. Smith, which we cited in our brief, it's very on point on here, where a defendant, 344 F. 2nd 203, it's a 2255 case, defendant said his lawyer told him he would get five years, he thought there was a, basically a verbal agreement. He got an eight-year sentence, he brought a 2255, claiming ineffective counsel. This court said all of the co-defendants had already pleaded guilty and had agreed as part of their plea bargains to testify against any co-defendant who went to trial. As a result of the plea bargain, certain charges were dropped, each carrying a possible 15-year sentence. The evidence was sufficient. We are fully persuaded that a reasonable person would have done as Smith. That's the same situation you have here, Your Honor, because if you look at the claim that is, it's not even really being made now that he would have went to trial, but to the extent Mr. Lemon raised that in his brief, look at the strength of the evidence Mr. Broussard would have faced. Had he gone to trial, he would have went to trial on 27 counts. Four other co-operators had pleaded guilty and were prepared to testify against him. The volumes of documentary of evidence that would have come in, including payroll records, parish reports, and correspondence to corroborate the co-operative witnesses. The bargain he got outweighs a belief that he would have went to trial. Twenty-five counts were dismissed, many of which involved 20-year maximum wire fraud counts. Instead, his sentence was capped, he got a reduction in his guideline calculation for acceptance of responsibility, and his sentencing exposure was capped. Because of that, Your Honor, it's not reasonable to believe under a Hill v. Lockhart that he would have went to trial. In conclusion, Your Honor, Mr. Broussard has never claimed that he did not know what the evidence against him was, that he didn't understand the charges or the consequences, or that trial evidence was held. Chronic does not apply, and he has not established prejudice under Hill. For that reason, we respectfully ask this Court to affirm Judge Head's denial of Section 2255 relief in this matter. All right. Thank you, Mr. Boydman. Thank you, Your Honor. Mr. Boydman, you saved time for rebuttal. The man pled guilty on September 25th of 2012. At that time, the U.S. Attorney knew that his first assistant and also chief of the He knew since March of 2012 that Jan Mann had been blogging. So he pleads guilty. At the point that he pleads guilty, he only knows about Perricone. He pleads guilty. About one month later, Jan Mann is outed. Now, Your Honor asked about her blogs. Well, December 2nd, the day that the indictment was returned, she blogs, They have been accused of stealing hundreds of thousands of our dollars and are charged with felonies galore. It sounds like a couple of you out there think they won't land in a pen. Haven't you been paying attention? You take the king down for anything you got him on. Al Capone went to jail for taxes, remember. Now, here is a person being prosecuted by a U.S. Attorney's office that expresses that kind of personal animus against a defendant. You know, the United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern. And whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. That culture, unfortunately, was not in place during Letton's posse. It just wasn't. And it seems to me that it's very, very disturbing that a person can be in jail now because of a prosecution's heavy-handed and culture that's different from that of the Attorney General and certainly different from what the Supreme Court says should be the situation. And it's not just the blogging. On that December the 3rd conference call, after Judge Head then found out about Jan Mann also blogging, he gets on the phone, he's upset, and he gets on the phone. And Letton is there, and Letton brings my young friend over here as one of the line assistants. And clever, and Judge Head drills them. Did you know that Jan Mann was blogging? And he says, honestly, he didn't know, and I believe him. All the time, while the judge is drilling these young line assistants, Jim Letton is right there, knowing that she was a blogger, and saying nothing, and letting them take the heat. Now, when you have that kind of a climate, and I know in my heart of hearts that I could prove at an evidentiary hearing that the real target of this investigation was Fred Hebe. Fred Hebe was what Letton wanted, his rival for that U.S. attorneyship. He should have never been involved to begin with, but that's who he was after. He had his top guns to do that. He tried it with Fazio. He tried it with Broussard. And for them to say, to get away with saying that the Broussard case had nothing to do with Riverbush and Fazio and vice versa is just not accurate. Now, have I proven that yet? No, but there are circumstances. Ken Polley, the current U.S. attorney, is recused from this case, not because he had anything to do with the Broussard case, but because he represented Hank Tunn in the Fazio case. Doesn't that tell you something? It tells me that the Justice Department has been able to artificially, I mean, when you talk about recusal, in the Fazio case, the Justice Department themselves recused Letton's office because of the misconduct. It just doesn't, a fish rots from the head down. And there is a smell about this case, which I think justifies us to proceed forward, to try to establish what I think actually happened. Thank you very much. All right, Mr. Lemon, your case is under submission. Yes, Your Honor. Final case of the day, United States v. Shuffle.